No. 20,447.

INDUSTRIAL COMMISSION OF COLORADO, ET AL., *v.*
HARRY J. WOLFER.
(381 P. [2d] 19)

Decided April 29, 1963.    Rehearing denied May 13, 1963.

Mr. DUKE W. DUNBAR, Attorney General, Mr. PETER
L. DYE, Assistant, for plaintiff in error Industrial Com-
mission of Colorado.

Mr. HAROLD CLARK THOMPSON, Mr. ALIOUS ROCKETT,
Mr. FRANCIS L. BURY, for plaintiffs in error State Com-
pensation Insurance Fund and City and County of Den-
ver — Police Department.

Mr. FRANK A. BRUNO, Mr. H. D. REED, for defendant in error.

*En Banc.*

MR. JUSTICE HALL delivered the opinion of the Court.

WE refer to the parties as the commission, the fund, the employer and the claimant.

On March 28, 1960, claimant filed his claim for compensation for permanent disability alleged to have arisen out of injuries to his heart suffered on January 15, 1960. Claimant described "how accident occurred" by stating, "Severe pain in chest at Police Headquarters."

Claimant seeks compensation, as provided by C.R.S. '53, 81-13-2, which provides for compensation, " * * * Where the injury or death is proximately caused by accident arising out of and in the course of his employment, * * * ."

From the record it appears that in January 1960, claimant was forty-nine years of age; he had served on the Denver Police Force for nineteen years, and during the last ten years had been a city detective assigned to the robbery division. His duties at times called for the checking of small two, three or four story hotels seeking robbery suspects.

Claimant testified that on January 12, 1960, he and his partner had a rather busy day from 7:30 A.M. until 4:00 P.M., including attending the daily 8:00 A.M. "show-up," checking in guns with the custodian, making book entries, and after 10:30 hotel checking, which involved considerable stair-climbing. At 4:00 P.M. he left his work and went home "very tired" with a tightness in his chest. He took the 13th and 14th off for the reason that he was not feeling good and he could have "days off" anytime and with pay.

Claimant returned to work on the 15th, performing his usual duties, and before noon, while in the custo-

dian's office, there "I became very dizzy, very sharp pain through the chest, and I just had to sit down, that was all there was to it."

He was then taken to the hospital where he was examined and treated for seven days, discharged and returned to work on January 22, 1960, and so far as appears from the record he was still working and drawing full pay at the time of the final award of the commission, dated November 30, 1961.

Claimant further testified to the fact that when eight or ten years of age he had suffered an attack of rheumatic fever, but that for years prior to 1960 he had been in good health.

Medical testimony was taken from four doctors. Claimant called three of the four as his witnesses; two who were specialists in cardiology, and the third, a specialist in allergy.

Dr. Ravin, one of claimant's witnesses, testified among other things that claimant had suffered from:

" * * * Known rheumatic heart disease for years. * * *. My impression was that he had inactive rheumatic heart disease with aortic stenosis and mild insufficiency.

* * *

"Mr. Wolfer has rheumatic heart involvement. That means that he has some scarred valves in his heart; one of these valves is the aortic valve and the one valve that is primarily involved. * * *."

Dr. Percefull, called as a witness for claimant, among other things testified:

"Q. Now at the time you first saw the claimant, what did you diagnose his condition to be, Doctor? A. Rheumatic heart disease, with aortic stenosis, and aortic insufficiency, and mitral stenosis and mitral insufficiency. Q. And Doctor, could you tell from your examination how long he might have been suffering from this condition? A. No, but I think you could be certain that it was of long standing. * * * Q. This disability is at-

tributable to what condition, Doctor? A. To Rheumatic heart disease."

Dr. Goldman, the allergy specialist, called as a witness for claimant, acceded to the opinion of Dr. Ravin, whom he had called in as a consultant.

Dr. Mutz, a specialist in internal medicine and cardiology, called as a witness by the fund, first saw claimant on May 1, 1961, and from his examination, among other things, reported:

"This patient has old rheumatic heart disease with aortic stenosis and insufficiency and mitral insufficiency. * * *

" * * * The pain could be due to pulmonary artery distress of a failing heart and is not an uncommon thing in rheumatic heart disease. * * * . Generally speaking, this patient is pursuing the usual course of rheumatic heart disease of his type and it is difficult to ascribe any of his symptoms to external stress. They are chiefly due to the increasing debility due to the natural course of his disease. * * * ."

On July 11, 1961, the referee made a supplemental award, wherein it is stated:

"Claimant's witness refused to measure the degree of aggravation and readily admitted that the present disability is attributable entirely to the pre-existing heart defect.

"As before noted, the respondents' physician was firm in his opinion that the claimant sustained no lasting disability as a result of his industrial accident and that his firm opinion was this difficulty was temporary in nature and only a passing incident of the medical history of the claimant.

"From this evidence the Referee finds that the claimant sustained no permanent partial disability directly attributable to his January 15, 1960 industrial accident.

"IT IS, THEREFORE, ORDERED: That the claimant's claim for compensation by reason of permanent partial disability be denied."

This award was affirmed by the commission on November 30, 1961.

Claimant had the commission's proceedings reviewed by the district court, which court, by judgment entered August 6, 1962, set aside the commission's award for the reason that:

" * * * said supplemental award and denial of compensation is erroneous and contrary to the law and in excess of the defendant Commission's jurisdiction."

The trial court remanded the matter to the commission with directions that it:

" * * * make an award to the plaintiff [claimant] for permanent disability in such amount as the defendant Commission deems advised on the record as made."

The commission, fund and employer are here by writ of error seeking reversal.

██ The facts found by the commission are amply supported by the testimony. In fact, there is no testimony to the contrary.

We find no testimony in the record to indicate that any portion of claimant's disability is due to any accidental injury arising out of his employment. His disability is, as found by the referee and commission, the natural disability resulting from long continued rheumatic heart disease.

We find no questions of law in the case as presented, and only one question of fact, i.e.: What, if any, portion of claimant's disability can be attributed to the alleged accident? All of the medical testimony was to the effect that claimant's disability is progressive and due to long standing illness. The problem of the commission was to determine a medical fact. This it did in accordance with the uncontradicted medical testimony. Such a finding cannot be disturbed on review.

██ Though the trial court sought to avoid making findings of fact contrary to those of the commission — procedure which we have repeatedly held to be improper — by stating that the award is *erroneous, con-*

*trary to law* and *in excess of the jurisdiction of the commission,* the effect of the court's judgment is no more nor less than a finding of the facts contrary to the findings of the commission.

We find nothing in the record to indicate that the commission acted in excess of its jurisdiction. It was the duty of the commission to entertain the claim, hear the testimony and resolve the matter. This it did and clearly was performing its quasi-judicial functions within the framework of its authority.

The judgment is reversed and the cause remanded to the trial court with directions to affirm the award of the commission.

MR. JUSTICE SUTTON not participating.